# GOLDGLIT AFFIDAVIT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GOLDGLIT & COMPANY LLP

                              Plaintiff,

     -against-

BASIL AGROCOSTEA,

                            Defendant.
-----------------------------------------------------------------X

Case No.:  12 CV 1838 (DAB)

**AFFIDAVIT OF
STEVEN GOLDGLIT, CPA**

STATE OF NEW YORK   )
                       )   ss.:
COUNTY OF NEW YORK  )

     STEVEN GOLDGLIT, CPA, being duly sworn, deposes and says:

     1.     I am the Managing Partner of Plaintiff Goldglit & Company, LLP (hereinafter "Goldglit" or the "firm").  I respectfully submit this Affidavit in support of Goldglit's application, via Order to Show Cause, for the issuance by this Court, pending resolution of the Causes of Action set forth in the underlying Complaint, *see, Exhibit "A,"* of a Preliminary Injunction enjoining, *inter alia,* Defendant BASIL AGROCOSTEA, ("Agrocostea" or "Defendant"), individually and through his company, Agro Accounting, from:

     (a) keeping, maintaining and/or possessing any records, in whatever form they may exist, that belong to Goldglit, including but not limited to those that refer to Goldglit clients;

     (b) utilizing or disclosing any information contained in such records;

     (c) soliciting, contacting, servicing, accepting or doing business with any Goldglit clients, prospective clients, referral sources or individuals and entities whom Agrocostea learned of and/or serviced during his employment with Goldglit, and;

(d)   utilizing or otherwise disseminating the fraudulent January 26, 2012 e-mail, more fully described herein (a copy of which is annexed as Exhibit B);

(e) otherwise unlawfully competing with Goldglit.

## NATURE OF THE CASE

2.      Goldglit is an established, well-respected accounting firm located in midtown Manhattan. On January 11, 2012, Goldglit terminated Defendant's employment due to a history of unprofessional and insubordinate behavior. As discussed in detail below, Defendant, while still employed by Plaintiff, misappropriated trade secrets including client lists and contact information which he later utilized to defame his Goldglit in an attempt to solicit Goldglit's clients and tarnish the firm's reputation in the art community. Following his termination, Defendant illegally accessed my e-mail and Outlook account and created and distributed a fraudulent e-mail from me to Goldglit's current and prospective clients which he used as a marketing tool to promote his own services while defaming the firm. In doing so, Plaintiff breached his duty of loyalty. The foregoing actions were meticulously calculated as part of a malicious campaign of unlawful competition against Goldglit.

3.      Plaintiff seeks injunctive relief and damages as the result of Defendant's tortious and unlawful campaign to steal our clients by using Goldglit's confidential business information which Agrocostea obtained while working for the firm. Unless immediately enjoined by this Court, Agrocostea will continue to use Goldglit's confidential business information to defame the firm and unfairly compete with his former employer.

## FACTUAL BACKGROUND

I.     **Goldglit's Business And Association With Defendant Agrocostea**

4.     Goldglit is a limited liability partnership duly incorporated and existing under the laws of the State of New York with its principal place of business located at 499 Seventh Avenue, Floor 14 South, New York, New York 10018. Goldglit was originally established as K.L. Goldglit & Company and operated for approximately twenty years. The current firm was established in 2003. Goldglit is a well-known and highly regarded accounting firm that offers a wide range of services to both individual and business clients. Goldglit's practice specializes in the arts. The firm primarily services industries such as: fine arts, art galleries, graphic design and branding as well as other creative fields such as architecture, writers/authors and artist representation.

5.     Goldglit is a relatively small firm and makes it a priority to provide personalized quality service to its clients that is beyond comparison. In addition to traditional accounting services, Goldglit offers tax services, business consulting, audit review and representation before taxing authorities, bookkeeping, art transaction assistance and estate planning to its clients.

6.     The firm has few competitors that specialize in the arts industry. It is a niche industry that, by its very nature, is not readily accessible to outside competitors.

7.     Goldglit's business contacts, processes and methods are confidential and proprietary trade secrets unknown to the public. Goldglit expends great efforts to maintain the confidentiality of its trade secrets.

8.     Goldglit expends great sums of money and exerts a great deal of effort and energy to develop, maintain and expand its client base in order to remain competitive in its industry and

protects, as confidential, its client lists, its processes and other proprietary information utilized in its business.

9.      Agrocostea commenced his employment with Goldglit in or about February 2, 2009. Agrocostea's job duties at Goldglit consisted of general accounting work. Defendant worked for the firm continuously until his termination on January 11, 2012.

10.     As a trusted employee, Agrocostea possessed intimate knowledge of Goldglit's confidential trade secrets, including, but not limited to its business process and client lists and contacts in the arts industry.

11.     Agrocostea's job duties kept him in contact with Goldglit's clients. Goldglit's clients regarded Agrocostea as a familiar and trusted employee of Goldglit.

12.     On or about January 11, 2012, Goldglit terminated Agrocostea's employment. Agrocostea's employment was terminated due to a pattern of unprofessional and insubordinate conduct.

13.     Notably, Agrocostea neither had a client list prior to his association with Goldglit nor does he have any personal clients currently being serviced by the firm. Stated differently, every client that he serviced and for which he was paid for such service by Goldglit originated while he was in the employ of Goldglit, and, in our opinion, as a direct result of Goldglit's reputation in the industry as well as its extensive advertising and marketing efforts and other expenditures of its resources.

## II. Agrocostea Commenced a Campaign of Unlawful Conduct

14.     At some point prior to Agrocostea's termination, Agrocostea commenced an unlawful and tortious campaign to unfairly compete against Goldglit in the accounting industry and solicit Goldglit's clients.

15.     Agrocostea was aware that lawful competition against Goldglit would be difficult, if not impossible. Therefore, he launched a calculated campaign to misappropriate Goldglit's trade secrets, engage in unfair competition against Goldglit, defame Goldglit and tortiously interfere with Goldglit's current and prospective business relations while tarnishing its reputation in the business community.

16.     The sum and substance of Defendant's unlawful business plan was as follows: Agrocostea, while still employed by Goldglit, accessed Goldglit's electronic database and copied contact information for Goldglit's clients.  Following Defendant's termination, on or about January 26, 2012, he illegally accessed my Outlook account and composed and sent a phony e-mail message from me to the firm's clients and contacts in the art community praising his performance at Goldglit and recommending his services to Goldglit's clients.  A copy of this fraudulent e-mail is attached hereto as Exhibit "B".  The email was replete with derogatory and defamatory statements.  The fictitious email also contained Agrocostea's telephone number and e-mail address.

17.     Upon learning that Agrocostea unlawfully accessed my Outlook account and sent the fraudulent e-mail, we immediately reported Agrocostea's criminal conduct to the New York City Police Department's 14th Precinct.  A criminal complaint was filed on January 26, 2012 under Complaint # 2012-014-00998 for aggravated harassment and related charges.  A copy of the Criminal Complaint Report is annexed hereto as Exhibit "C".

18.     Following the mass mailing of the fictitious e-mail to Goldglit's clients, Agrocostea continued to use Goldglit's trade secrets to unlawfully and tortiously compete against his former employer.

19.     In this regard, on or about February 20, 2012, Agrocostea sent a personal letter to Goldglit's clients and the professional community along with a copy of the fictitious e-mail which he used as a purported "reference" in an attempt to poach Goldglit's business. A copy of a letter from Agrocostea to one of Goldglit's clients is attached hereto as Exhibit "D". Upon information and belief, this letter was sent to many Galleries and Art entities. Accordingly, it is my fear that these potential clients of Goldglit will view both myself and the firm in a negative manner.

20.     Agrocostea clearly breached his duty of loyalty to Goldglit and misappropriated Goldglit's trade secrets by stealing and utilizing confidential client contact information and by hacking into my Outlook account and sending a phony e-mail to Goldglit's clients under my name.

21.     It should be noted that Agrocostea never had access to any of my passwords or e-mail or Outlook account during his employment and certainly never had permission to access it at any time. The fact that Agrocostea hacked into my e-mail and Outlook accounts after his termination is alarming and at this juncture I do not know the full extent of his illegal conduct given that he had illegal access to all of the information on my computer. It should be noted that my Outlook account contained detailed contact information for over 875 of my business and personal contacts which consisted of both clients and professional contacts in the art community.

22.     As set forth above, Agrocostea solicited Goldglit's clients by defaming Goldglit and making entirely false statements through the use of stolen confidential information and has continued to use the fraudulent email as a marketing tool with Goldglit's clients and the professional community in general.

23.     Just prior to his termination, we discovered that Agrocostea was attempting to establish his own Practice. When I confronted him with this issue he denied it. This was a contributing factor to his termination. Goldglit, however, was unaware of the full extent of Agrocostea's unlawful and tortious activity at the time of his termination.

24.     Defendant's fraudulent e-mail and subsequent contacting of Goldglit clients has had the effect of damaging Goldglit's reputation within the industry while at the same time alarming our clients about the security of the information they store with our firm.

25.     As a result, Goldglit has spent large amounts of hours and money, during our busiest time of the year, dealing with the fallout from Defendant's fraudulent conduct. We have had to respond to the initial email and take additional steps to ensure the security of client information as well as reassure our clients about the security of their files. Goldglit has also had to defend our previously untarnished reputation in the industry.

26.     Upon information and belief, Defendant intends to continue his scheme of soliciting Goldglit's clients by using the unlawfully obtained trade secrets, including client lists and contact information.

27.     Upon information and belief, Defendant will unlawfully utilize Goldglit's trade secrets to unlawfully market his accounting services to Goldglit clients. In doing so, Agrocostea will tortiously interfere with Goldglit's present and prospective business relations.

28.     Upon information and belief, Agrocostea will continue to defame Goldglit to its clients and jeopardize Goldglit's important business relationships and reputation in the art community.

29.     Absent an injunction barring Agrocostea from misappropriating trade secrets, engaging in unlawful competition, defaming Goldglit, tortiously interfering with Goldglit's contractual and business relations, Goldglit will continue to suffer irreparable harm.

30.     Critically, the 2012 Tax Season is underway. Accordingly, without the immediate issuance of the requested Temporary Restraining Order and the subsequent imposition of the requested Preliminary Injunction, Agrocostea will continue to steal and/or attempt to steal, our clients and damage our reputation in the business community causing Goldglit to be irreparably injured by virtue of the loss of the good will with clients that we have spent large amounts of time and money developing. Indeed, it is clear that Agrocostea is soliciting Goldglit's clients by the use of deceptive and illegal practices and absent a restraint on his unlawful activity, we will sustain a loss of business which would be impossible to quantify with any degree of certainty. Money damages would simply be insufficient to fully compensate Goldglit for the loss that will occur without such immediate relief.

31.     Absent an injunction barring Agrocostea from misappropriating trade secrets, engaging in unlawful competition, defaming Goldglit, tortiously interfering with Goldglit's contractual and business relations, Goldglit will continue to suffer irreparable harm.

WHEREFORE, Plaintiff Goldglit respectfully submits that its instant application for the issuance of a Temporary Restraining Order and Preliminary Injunction be granted, along with such other and further relief as this Court deems just and proper.

_____
STEVEN GOLDGLIT, CPA

Sworn to me this _12_

day of _March_, 2012.

_____
Notary Public

DARLENE A. BAINS
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01BA4767183
COMMISSION EXPIRES 2/28/15

EXHIBIT A

Kenneth A. Novikoff (KAN 0350)
Laura L. Shockley (LLS 6040)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Goldglit & Company LLP*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

GOLDGLIT & COMPANY LLP

Plaintiff,

-against-

BASIL AGROCOSTEA,

Defendant.
-----------------------------------------------------------------X

Case No.:  12 CV 1838 (DAB)

**COMPLAINT**

Jury Trial Demanded

Plaintiff, Goldglit & Company LLP ("Goldglit" or "Plaintiff"), by and through their counsel Rivkin Radler LLP, as and for their Complaint against the Defendant, Basil Agrocostea ("Defendant" or "Agrocostea"), hereby alleges as follows:

## NATURE OF THE CASE

1.      Goldglit is an established, well-respected accounting firm located in midtown Manhattan. Plaintiff seeks injunctive relief and damages as the result of Defendant's tortious and unlawful campaign to compete against Goldglit, his former employer.

2.      As discussed in detail below, Defendant, while still employed by Plaintiff, misappropriated trade secrets including client lists and contact information. Following his termination, Defendant utilized these trade secrets to defame his employer Goldglit in an attempt to solicit Goldglit's clients. In doing so, Plaintiff breached his duty of loyalty. The foregoing

actions were meticulously calculated as part of a malicious campaign of unlawful competition against Goldglit.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C § 1331, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Lanham Act, 15 U.S.C. § 1125.

4.      Venue is proper in this judicial District under 28 U.S.C. § 1391(b) because Plaintiff has offices, conducts business, and can be found in this District, and the cause of action substantially arose and the acts and omissions complained of occurred herein.

## THE PARTIES

5.      Plaintiff Goldglit is a limited liability partnership duly incorporated and existing under the laws of the State of New York with its principal place of business located at 499 Seventh Avenue, Floor 14 South, New York, New York 10018.

6.      Defendant Agrocostea is a resident of the State of New York, residing at 25-42 43rd Street, Long Island City, New York 11103.

## FACTUAL ALLEGATIONS

### I. Company Background and Industry Practices

7.      Goldglit was originally established as K.L. Goldglit & Company and operated for approximately twenty years. Goldglit's current firm was established in 2003. Goldglit is a well-known and highly regarded accounting firm that offers a wide range of services to both individual and business clients. Goldglit's practice specializes in the arts. The firm primarily services industries such as: fine arts, art galleries, graphic design and branding as well as other creative fields such as architecture, writers/authors and artist representation.

8.      Goldglit is a relatively small firm that makes it a priority to provide personalized quality service to its clients that is beyond comparison. In addition to traditional accounting services, Goldglit offers tax services, business consulting, audit review and representation before taxing authorities, bookkeeping, art transaction assistance and estate planning to its clients.

9.      Goldglit has few competitors that specialize in the arts industry. It is a niche industry that, by its very nature, is not readily accessible to outside competitors.

10.     Goldglit's business contacts, processes and methods are confidential and proprietary trade secrets unknown to the public. Goldglit expends great efforts to maintain the confidentiality of its trade secrets.

**II. Defendant's Employment with Goldglit**

11.     Agrocostea commenced his employment with Goldglit in or about February 2, 2009. Defendant worked for the company continuously until his termination on January 11, 2012.

12.     As a trusted employee, Agrocostea possessed intimate knowledge of Goldglit's confidential trade secrets, including, but not limited to its business process and client lists and contacts in the arts industry.

13.     Agrocostea's job duties at Goldglit consisted of general accounting work, including reviews and compilations, bank reconciliations, preparation of tax returns and representation of clients during audits among other things.

14.     Agrocostea's job duties kept him in contact with the Goldglit's clients. Goldglit's clients regarded Agrocostea as a familiar and trusted employee of Goldglit.

15. On or about January 11, 2012, Goldglit terminated Agrocostea's employment. Agrocostea's employment was terminated due to a pattern of unprofessional and insubordinate conduct.

### III. Agrocostea Commenced a Campaign of Unlawful Conduct

16. At some point prior to Agrocostea's termination, Agrocostea commenced an unlawful and tortious campaign to compete against Goldglit in the accounting industry and solicit Goldglit's clients.

17. Agrocostea was aware that lawful competition against Goldglit would be difficult, if not impossible. Therefore, he launched a calculated campaign to misappropriate Goldglit's trade secrets, engage in unfair competition against Goldglit, defame Goldglit and tortiously interfere with Goldglit's current and prospective business relations.

18. The sum and substance of Defendant's unlawful business plan was as follows: Agrocostea, while still employed by Goldglit, accessed Goldglit's electronic database and copied contact information for Goldglit's clients. Following Defendant's termination, on or about January 26, 2012, he illegally accessed the e-mail and Outlook account of Steven Goldglit, the Managing Partner of Goldglit, and sent a fraudulent e-mail message from Mr. Goldglit to the firm's clients and business contacts praising Agrocostea's performance and recommending Agrocostea's services to Goldglit's clients. The email was replete with derogatory and defamatory statements regarding Mr. Goldglit. The fraudulent email contained Agrocostea's telephone number and e-mail address.

19. Agrocostea was never provided with Steven Goldglit's password to enable him to access Mr. Goldglit's e-mail or other electronic database.

20.    At no time did Agrocostea have permission or authority to access Steven Goldglit's e-mail or Outlook account or any other email or Outlook account at Goldglit, other than his own.

21.    Mr. Goldglit's Outlook account contained detailed contact information for over 875 of his business and personal contacts which consisted of both clients and professional contacts in the art community.

22.    Upon learning that Agrocostea unlawfully accessed Mr. Goldglit's Outlook account and sent the fraudulent e-mail, Goldglit immediately reported Agrocostea's criminal conduct to the New York City Police Department's 14th Precinct. A criminal complaint was filed on January 26, 2012 under Complaint # 2012-014-00998 for aggravated harassment and related charges.

23.    Following the mass mailing of the fraudulent e-mail to Goldglit's clients and business contacts, Agrocostea continued to use Goldglit's trade secrets to unlawfully and tortiously compete against his former employer.

24.    In this regard, on or about February 20, 2012, Agrocostea sent a copy of the fraudulent e-mail, which he signed and purportedly notarized, along with a personal letter, to the professional community and to Goldglit's clients directly soliciting their business.

25.    Agrocostea clearly breached his duty of loyalty to Goldglit and misappropriated Goldglit's trade secrets by utilizing confidential client contact information and by accessing Goldglit's Outlook account and sending a fraudulent e-mail to Goldglit's clients under Mr. Goldglit's name.

26.    Agrocostea solicited Goldglit's clients by defaming Goldglit and making entirely false statements through the use of stolen confidential information.

27.     Goldglit was unaware of any of Agrocostea's aforementioned unlawful and tortious activity at the time of his termination.

28.     Upon information and belief, Defendant intends to continue his scheme of soliciting Goldglit's clients by using unlawfully obtained trade secrets, including client lists and contact information.

29.     Upon information and belief, Defendant will unlawfully utilize Goldglit's trade secrets, including but not limited to customer lists, to market his accounting services to Goldglit clients.  In doing do, Agrocostea will tortiously interfere with Goldglit's present and prospective business relations.

30.     Upon information and belief, Agrocostea will continue to defame Goldglit to its clients, jeopardizing Goldglit's important business relationships.

## FIRST CAUSE OF ACTION
### (Violation of the Computer Fraud and Abuse Act)

31.     Goldglit incorporates by reference the allegations contained in paragraphs 1 through 30 above as if fully set forth in this cause of action.

32.     Goldglit's computers and computer systems are "protected computers" under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(2).

33.     By his wrongful action, Agrocostea intentionally accessed Goldglit's protected computer system, without authorization or in excess of authorized access, and thereby obtained and utilized information from Goldglit's protected computer systems for the purposes of engaging in unfair competition, deceptive trade practices and misappropriating trade secrets.

34.     By his wrongful actions, Agrocostea furthered his unlawful objectives, obtained unauthorized use of Goldglit's protected computer system, obtained proprietary information, and deleted proprietary information, the value of which exceeded $5,000 in any one year period.

35.     By his wrongful actions, Agrocostea intentionally accessed Goldglit's protected computer system without authorization and, as a result of his conduct, caused Goldglit damage and loss.

36.     The wrongful actions of Agrocostea have caused loss to Goldglit that exceeds $5,000 in any one year period in that Goldglit has spent more than $5,000 in responding to the offense, restoring the information damaged on the protected computer system and conducting a damage assessment.

37.     The activity of Agrocostea constitutes a violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), (a)(4), (a)(5)(C), and Goldglit is entitled to full compensatory damages under that Act.

## SECOND CAUSE OF ACTION
### (Violation of Lanham Act)

38.     Goldglit incorporates by reference the allegations contained in paragraphs 1 through 37 above as if fully set forth in this cause of action.

39.     As set forth above, Defendant engaged in false advertising by disseminating commercial material to Goldglit's client's that falsely appeared to have originated from Goldglit.

40.     Defendant's statements in the fraudulent email and subsequent solicitation letter constitute commercial speech.

41.     Defendant's statements were intended to influence consumers to purchase Defendant's services.

42.     Defendant disseminated false and fraudulent statements to the relevant purchasing public.

43.     By his wrongful actions, Agrocostea caused Goldglit damage and loss.

44.     The activity of Agrocostea constitutes a violation of the Lanham Act, 15 U.S.C. §

1125, and Goldglit is entitled to full compensatory damages under that Act.

## THIRD CAUSE OF ACTION
### (Unfair Competition)

45.     Goldglit incorporates by reference the allegations contained in paragraphs 1

through 44 above as if fully set forth in this cause of action.

46.     By willfully breaching his duty of loyalty and by misappropriating Goldglit's

confidential and proprietary information and trade secrets and unlawfully accessing and utilizing

Goldglit's e-mail and Outlook accounts, Agrocostea has acted in bad faith and has engaged in

unfair competition against Goldglit.  Agrocostea continues to engage in the aforementioned

unfair competition to the present day.

47.     These actions constitute unfair and deceptive trade practices and unfair

competition.

48.     As a direct and proximate result of the deceptive trade practices and unfair

competition by Agrocostea, Goldglit has suffered and will continue to suffer extensive,

irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which

there is no adequate remedy at law.  Goldglit will continue to suffer this harm until Agrocostea is

restrained from the aforementioned conduct.

49.     As a direct and proximate result of Agrocostea's deceptive trade practices and

unfair competition, Goldglit has suffered and will continue to suffer extensive economic loss and

other damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Breach of Duty of Loyalty)

50.     Goldglit incorporates by reference the allegations contained in paragraphs 1 through 49 above as if fully set forth in this cause of action.

51.     By virtue of his employment at Goldglit, Agrocostea was required to act solely in Goldglit's interests.

52.     Agrocostea breached his duty of loyalty to Goldglit by misappropriating trade secrets in order to defame Goldglit to its clients, solicit Goldglit's clients and tortiously interfere with Goldglit's contractual and business relations.

53.     As a direct and proximate result of Agrocostea's breach of duty of loyalty, Goldglit has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business and other injuries and damages for which there is no adequate remedy at law.

54.     As a direct and proximate result of Agrocostea's breach of duty of loyalty, Goldglit has suffered and will continue to suffer extensive economic loss and other damages in an amount to be proven at trial.

55.     Agrocostea committed these actions knowingly, willfully and in conscious disregard of his duty to Goldglit. Accordingly, Agrocostea should be disgorged of economic benefits obtained from said breach.

## FIFTH CAUSE OF ACTION
### (Defamation)

56.     Goldglit incorporates by reference the allegations contained in paragraphs 1 through 55 above as if fully set forth in this cause of action.

57.    In the furtherance of his efforts to unlawfully solicit Goldglit's clients, Agrocostea intentionally and maliciously published knowingly false statements regarding Goldglit.

58.    Agrocostea published such false and defamatory statements of and concerning Goldglit with actual knowledge of the falsity thereof.

59.    Said statements were made in order to impugn and defame Goldglit's business competence, integrity and capacity to perform services and, upon information and belief, the defamatory statements were so understood.

60.    As a consequence of Agrocostea's publication of these defamatory statements, Goldglit was and continues to be injured in its business reputation, character and standing.

61.    In publishing said statements, Agrocostea acted with actual malice and said statements constituted slander per se.

62.    As a direct and proximate result of Agrocostea's defamation, Goldglit has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law. Goldglit will continue to suffer this harm until Agrocostea is restrained from the aforementioned conduct.

63.    As a direct and proximate result of Agrocostea's defamation, Goldglit has suffered and will continue to suffer extensive economic loss and other damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Tortious Interference with Contractual and Business Relations)

64.     Goldglit incorporates by reference the allegations contained in paragraphs 1 through 63 above as if fully set forth in this cause of action.

65.     Goldglit has maintained substantial and on-going contractual and business relations with its clients for many years.

66.     At all relevant times, Agrocostea was aware of Goldglit's contractual and business relations with its clients.

67.     Agrocostea has unlawfully defamed Goldglit to its clients and has furthermore misappropriated confidential and proprietary trade secrets, disrupting Goldglit's business with its clients.

68.     By using Goldglit's unlawfully obtained confidential and propriety trade secrets including, but not limited to client lists, Agrocostea has already and will continue to solicit Goldglit clients in an attempt to induce them to limit and/or cease their relationships with Goldglit in favor of Agrocostea.

69.     Upon information and belief, Agrocostea has attempted to induce Goldglit's clients to breach their contractual and business relations with Goldglit.

70.     Agrocostea, by his actions, has damaged and disrupted Goldglit's contractual and business relations with its clients.

71.     As a direct and proximate result of Agrocostea's tortious interference with contractual and business relations, Goldglit has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law.  Goldglit will continue to suffer this harm until Agrocostea is restrained from the aforementioned conduct.

72. As a direct and proximate result of Agrocostea's tortious interference with contractual and business relations, Goldglit has suffered and will continue to suffer extensive economic loss and other damages in an amount to be proven at trial.

73. Agrocostea, by his actions, has and will continue to damage and disrupt Goldglit's contractual and business relations with its customers.

## SEVENTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets)

74. Goldglit incorporates by reference the allegations contained in paragraphs 1 through 73 above as if fully set forth in this cause of action.

75. By virtue of his employment with Goldglit, Agrocostea received, used and had knowledge of Goldglit's confidential and proprietary information and trade secrets.

76. This confidential and proprietary information and trade secrets has independent economic value and is not generally known to the public or readily ascertainable by persons other than Goldglit.

77. Goldglit has made and continues to make reasonable efforts to maintain the secrecy of this confidential and proprietary and trade secret information.

78. Agrocostea has disclosed and utilized and continues to disclose and utilize, without the express or implied consent of Goldglit, this confidential and proprietary information and trade secrets for his own benefit.

79. As a direct and proximate result of the misappropriation of trade secrets by Agrocostea, Goldglit has suffered and will continue to suffer extensive, irreparable injury, loss of goodwill, harm to its business, and other injury and damages for which there is no adequate remedy at law. Goldglit will continue to suffer this harm until Agrocostea is restrained from the aforementioned conduct.

80.     As a direct and proximate result of Agrocostea's misappropriation of trade secrets and confidential and proprietary information, Goldglit has suffered and will continue to suffer extensive economic loss and other damages in an amount to be proven at trial.

## JURY DEMAND

81.     Goldglit respectfully requests a trial by jury of this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Goldglit respectfully requests that the Court:

A.     Enter a judgment declaring that Agrocostea should return all of Goldglit's property, including records, documents, data and equipment, and all copies (regardless of the medium in which maintained or stored) of any such property not previously destroyed;

B.     Enter a judgment declaring that Agrocostea be disgorged of any economic benefit obtained from his unlawful and tortious actions against his former employer Goldglit;

C.     Enter a judgment against Defendant on the First Cause of Action in an amount not yet fully calculated, but believed to be in excess of $1,000,000;

D.     Enter a judgment against Defendant on the Second Cause of Action in an amount not yet fully calculated, but believed to be in excess of $1,000,000;

E.     Enter a judgment against Defendant on the Third Cause of Action in an amount not yet fully calculated, but believed to be in excess of $1,000,000;

F.     Enter a judgment against Defendant on the Fourth Cause of Action in an amount not yet fully calculated, but believed to be in excess of $1,000,000;

G.     Enter a judgment against Defendant on the Fifth Cause of Action in an amount not yet fully calculated, but believed to be in excess of $1,000,000;

H.  Enter a judgment against Defendant on the Sixth Cause of Action in an amount not yet fully calculated, but believed to be in excess of $1,000,000;

I.  Enter a judgment against Defendant on the Seventh Cause of Action in an amount not yet fully calculated, but believed to be in excess of $1,000,000;

J.  For such other and further relief that this Court deems just and necessary.

Dated: March 12, 2012

RIVKIN RADLER LLP
*Counsel for Goldglit &*
*Company LLC*

By: _____
Kenneth A. Novikoff (KAN-0350)
Laura L. Shockley (LLS 6040)
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

2587662 v1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GOLDGLIT & COMPANY LLP,

Plaintiff,

v.

BASIL AGROCOSTEA,

Defendant.

## SUMMONS

Plaintiff
RIVKIN RADLER LLP

*Attorneys for*

926 RXR PLAZA
UNIONDALE, NEW YORK 11556-0926
(516) 357-3000

FILE# _____ /

*To:*

*Attorney(s) for*

*Service of a copy of the within*                                                    *is hereby admitted.*

*Dated:*

.................................................................................

*Attorney(s) for*

*PLEASE TAKE NOTICE*

☐  that the within is a (certified) true copy of a
NOTICE OF   entered in the office of the clerk of the within named Court on                    20
ENTRY

☐  that an Order of which the within is a true copy will be presented for settlement to the Hon.
NOTICE OF                                          one of the judges of the within named Court,
SETTLEMENT  at

on                               20      , at           M.

*Dated:*

RIVKIN RADLER LLP

*Attorneys for*

926 RXR PLAZA
UNIONDALE, NEW YORK 11556-0926

*To:*

FILE# _____ /

# EXHIBIT B



Basil Agrocostea <basyagro@gmail.com>

# Goldglit advice

**Steven Goldglit <Steven@goldglit.com>**                                              Thu, Jan 26, 2012 at 2:43 AM
To: "basyagro@gmail.com" <basyagro@gmail.com>

Dear clients – I am writing you about my former "silent real partner" in growth, Basil Agrocostea. It is clear by the odd timing of this email that I write you most openly, earnestly.

Basil came to my Firm nearly 3 years ago. In his time with us, he has made considerable contributions to our growth. I want to tell you about them because I recently lost my temper and fired him. In retrospect I committed a gross injustice. Basil brought a couple of clients to the Firm – my well experienced definition of bringing clients being, having first contact or being requested for by a new client. He also developed a strong level of trust with some clients, either gaining their referral or him providing the contact of relevant potential customers to them. As Basil's interaction with clients was executive in nature yet whereas I repeatedly placed him last on the compensation totem pole, I am regretful for betraying my sworn values of integrity and fairness and I ask you to please lend me your ears this morning to the good work Basil did which affected many of you. Okay?

Basil Agrocostea handled the largest responsibility of payroll tax preparation in the Firm. Last year when president Obama passed special tax credits to employers for hiring new workers, Basil was the first in our office to claim the tax credits for our clients and pass on the knowledge to our team. In the fall, he approached me with the idea of signing up many of our clients with ADP, reducing our clients' costs and lessening payroll work on our end. His work in sales tax preparation was equally impressive. He prepared sales tax returns for multiple states and took interest independently in determining whether conducting an art fair in another state would require sales tax filing in that state. He was the first and only in my Firm to electronically file pension forms. His work on pension and profit sharing plans was clearly commended by my trusted Actuary of many years: in writing to us regarding pension and profit sharing filing obligations, she copied (just) my long time Partner Rick, Basil and I last year.

Basil Agrocostea motivated my Staff – all of us – with a concept of growing by delegating tasks to team members and optimizing our image for clients. He actively sought obtaining a low cost intern to assist him with his growing responsibilities, a level of responsibility I encouraged him to take on and an interns help I verbally approved at the end of his first year with us. He had successfully reached out to his college professor and interviewed an intern but in the end we shot him down on it, by obtaining an assistant for our Secretary. If our Secretary of 30 years has never had an assistant before and if Basil persisted on obtaining an intern, then who is the engine for team growth – Basil is. Sound okay? In one of his latest actions to grow the firm efficiently, he fearlessly argued with a Partner on an HR deployment issue, on how to present the engagement team in a mutually beneficial way to our beloved client.

The above are the indirect ways in which Basil acted as a catalyst to our continued progress. In income tax preparation and tax planning, he was one of the more effective people I relied on. He would go the extra mile by not accepting what was presented to him as final and trying to improve it. For a client with multiple properties, he took the time to account for each property's costs separately even if that information was not needed for the income tax preparation. For a client with rent from multiple tenants, he would seek creativity in claiming the loss as business vs rental – a business loss is fully deductible but a rental loss is limited. He was wrong on that and he was wrong other times too. However his ideas were worthwhile and when he was right, he brought considerable advantage to the taxpayer's position. He insisted foreign income is not always subject to self-employment tax and I accepted it because the accountant / tax lawyer my Firm has shared space with for over 30 years agreed with him.

In an international art climate, Basil led the way for our Firm in new regulations that require disclosure of foreign business ownership. He tutored me on preparing the necessary form for one of our top three largest clients. In a

down economy that has affected the art market capriciously; I put him in charge of carrying back business losses and obtaining prior year tax refunds. With his creativity and drive, he increased a client's deductible carryback loss by 150% from the amount I had determined and obtained IRS approval for his tactic. Basil was / is building a client base in Arts with the intent of joining the Firm. I have learned he is the accountant to public charity Section 509a not for profits – like museums – which gives him a fuller understanding of cycle in the art industry. He told me about a personal client with million-dollar sculpture art that is on public display in the Hamptons. I do not doubt his networking skills, I never took the time to appreciate them and I recount my good character now.

Basil Agrocostea came to me with open arms on his networking activities. He would tell me at my desk about the banking affairs he attended at Alliance Bernstein. He even once forwarded me an email personal in nature, on the artistic pursuits of his Bernstein Family Girlfriend. He would always seek to share, yet remain a low key person. I was flagrantly in the wrong on first not reciprocating his intellectual and character's value throughout his three years with our Firm, then second with firing him. Actions are stronger than words and I kindly request of you – as Basil would say – to consider the services of my former, great Associate. He is a teammate I know will boomerang back to me fairly and, will ultimately help the Goldglit name you have all so warmly and generously patronized with years of undying and loving loyalty.

Thank you for reading this honest email. Please consider the professional services of my former, great Associate Basil Agrocostea. Please. For sure he and I should come together again.

Basil Agrocostea: 917-650-4534 / Basyagro@Gmail.com

Sincerely, steven

Steven Goldglit
Goldglit & Company LLP

**Please Note Our New Address:**

499 Seventh Avenue
Floor 14 South
New York NY 10018
212-868-7200
Steven@Goldglit.com
http://goldglit.com/

RECEIVED 

JULIAN L. COLE
Notary Public, State of New York
No. 01CO6230399
Qualified in New York County
Commission Expires 11 01 20 14

EXHIBIT C



# New York City Police Department
## Omniform System - Complaints



| Report Cmd:<br>014 | Jurisdiction:<br>N.Y. POLICE DEPT | | Record Status:<br>Final, No Arrests | Complaint #:<br>2012-014-00998 |
|---|---|---|---|---|

**Occurrence Location: INSIDE OF 499 7 AVENUE**
- Name Of Premise: GOLDGLIT & COMPANY
- Premises Type: COMMERCIAL BUILDING
- Location Within Premise: MANAGEMENT OFFICES/O
- Visible By Patrol?: NO

Precinct: 014
Sector: D
Beat: 15
Post: 67

**Occurrence From: 2012-01-26 02:00 THURSDAY**
- Occurrence thru: 2012-01-26   08:00
- Reported: 2012-01-26   10:49
- Complaint Received: RADIO

Aided #
Accident #
O.C.C.B. #

**Classification: AGG HARASSMENT**
- Attempted/Completed: COMPLETED
- Most Serious Offense Is: MISDEMEANOR
- PD Code: 639  AGGRAVATED HARASSMENT 2
- PL Section: 24030
- Keycode: 361  OFF. AGNST PUB ORD SENSBLTY &

**Case Status: OPEN**
- Unit Referred To: P.D.U.
- Clearance Code:
- Log/Case #: 0
- File #:
- Prints Requested? NO

| Was The Victim's Personal Information Taken Or Possessed?<br>NO | | Was The Victim's Personal Information Used To Commit A Crime?<br>NO | |
|---|---|---|---|
| Gang Related?<br>NO | Gang Intel Log #: | Name Of Gang: | Child Abuse Suspected?<br>NO |
| DIR Required?<br>NO | | Child in Common?<br>NO | Intimate Relationship?<br>NO |

**If Burglary:**
- Forced Entry?
- Structure:
- Entry Method:
- Entry Location:

**Alarm:**
- Bypassed?
- Comp Responded?:
- Company Name/Phone:
- Crime Prevention Survey Requested?:

**If Arson:**
- Structure:
- Occupied?:
- Damage by:

| Supervisor On Scene - Rank / Name / Command : | Canvas Conducted:<br>NO | Interpreter(if used): |
|---|---|---|

**NARRATIVE:**
AT T/P/O REPORTER STATES THAT HE HAD RELEASED AN EMPLOYEE ON 01/20/12 AND SINCE THAT DATE SAID EMPLOYEE BEGAN SENDING MASS E-MAILS TO COMPANY MEMBERS/EMPLOYEES DISRUPTING THEIR BUSINESS.

## No NYC TRANSIT Data for Complaint # 2012-014-00998

| Total Victims:<br>1 | Total Witnesses:<br>0 | Total Reporters:<br>1 | Total Wanted:<br>1 |
|---|---|---|---|

| *VICTIM: # 1 of 1* | Name:<br>GOLDGLIT & COMPANY | Complaint#:<br>2012-014-00998 |
|---|---|---|

| Nick/AKA/Maiden:<br>UMOS:<br>Sex/Type: BUSINESS<br>Race: UNKNOWN<br>Age: 0<br>Date Of Birth: UNKNOWN<br>Disabled? NO<br>Need Interpreter: | Gang Affiliation: NO<br>Name:<br>Identifiers:<br><br>Will View Photo: YES<br>Will Prosecute: YES<br>Notified Of Crime NO |
|---|---|

| Language:  N.Y.C.H.A Resident? | Victim Comp. Law: |
| --- | --- |

| LOCATION ADDRESS CITY STATE/COUNTRY ZIP APT/ROOM |
| --- |
| BUSINESS 499 7 AVENUE MANHATTAN NEW YORK 10018 |

| Phone #: BUSINESS:212-868-7200 |
| --- |

| Action against Victim: | Actions Of Victim Prior To Incident: UNK |
| --- | --- |
| Victim Of Similar Incident: NO | If Yes, When And Where |

## REPORTER: # 1 of 1

| Name: STEIN,MICHAEL | Complaint #: 2012-014-00998 |
| --- | --- |

| Nick/AKA/Maiden: | Gang Affiliation: NO |
| --- | --- |
| Sex/Type: MALE | Name: |
| Race: WHITE | Identifiers: |
| Age: 043 | |
| Date Of Birth: 05/17/1968 | |
| Need Interpreter: NO | Relationship To Victim: EMPLOYEE |
| Language: | |

| Location Address City State/Country Zip Apt/Room |
| --- |
| HOME-PERMANENT 499 7 AVENUE MANHATTAN NEW YORK |

| Phone #: BUSINESS:212-868-7200 E-MAIL: MICHAEL@GOLDGLIT.COM |
| --- |

## WANTED: # 1 of 1

| Name: AGROCOSTEA, BASIL | Complaint#: 2012-014-00998 |
| --- | --- |

| Nick/AKA/Maiden: | Height: 5FT08IN | Order Of Protection: NO |
| --- | --- | --- |
| Sex: MALE | Weight: 160 | Issuing Court: |
| Race: WHITE | Eye Color: BROWN | Docket #: |
| Age: 19 | Hair Color: BROWN | Expiration Date: |
| Date Of Birth: 10/18/1992 | Hair Length: NORMAL | Relation to Victim: EMPLOYEE |
| U.S. Citizen: | Hair Style: UNKNOWN | Living together: NO |
| Place Of Birth: | Skin Tone: LIGHT | Can be Identified: YES |
| Need Interpreter: NO | Complexion: UNKNOWN | |
| Language: | | Gang Affiliation: |
| Accent: NO | S.S. #: 0 | Name: |
| | | Identifiers: |

| LOCATION ADDRESS CITY STATE/COUNTRY ZIP APT/ROOM HOW LONG? RES. PCT |
| --- |
| HOME-PERMANENT 25-42 43 STREET ASTORIA NEW YORK 11103 |

| Phone #: CELL: 917-650-4534 E-MAIL: BASYAGRA@GMAIL.COM |
| --- |

| N.Y.C.H.A. Resident: N.Y.C. Housing Employee: On Duty: |
| --- |
| Development: N.Y.C. Transit Employee: |

| Physical Force:THREATENED |
| --- |

| Gun: | | |
| --- | --- | --- |
| Weapon Used/Possessed: NONE | Make: | Recovered: |
| Non-Firearm Weapon: | Caliber: | Serial Number Defaced: |
| Other Weapon Description: | Color: | Serial Number: |
| | Type: | |
| Other/Gun Specify: | | |
| Discharged: NO | | |

| Used Transit System: |
| --- |
| Station Entered: |
| Time Entered: |
| Metro Card Type: |
| Metro Card Used/Poses: |
| Card #: |

| CRIME DATA | DETAILS |
|---|---|
| MODUS OPERANDI | SENT E-MAILS |
| MODUS OPERANDI | UNKNOWN |
| ACTIONS TOWARD VICTIM | EMAILS |
| CLOTHING | ACCESSORIES -UNK -UNKNOWN COLOR |
| CLOTHING | OUTERWEAR -UNK -UNKNOWN COLOR |
| CLOTHING | FOOTWEAR -UNK -UNKNOWN COLOR |
| CLOTHING | HEADGEAR -UNK -UNKNOWN COLOR |
| CHARACTERISTICS | UNKNOWN |
| BODY MARKS | -UNKNOWN |
| BODY MARKS | -UNKNOWN |
| IMPERSONATION | UNKNOWN |

## ARRESTS:                                      Complaint # 2012-014-00998

| Arrest ID | Status | Defendant Name | Sex | Race | AGE | Arrest Date |
|---|---|---|---|---|---|---|
| M12609357 | ACTIVE | AGROCOSTEA, BASIL | MALE | WHITE | 29 | 01/30/2012 |

### No IMEI Data for Complaint # 2012-014-00998

| | Tax #: | Command: | Rep.Agency: |
|---|---|---|---|
| Reporting/Investigating M.O.S. Name:<br>POM PRITCHARD JOSEPH | 937311 | M PCT S | NYPD |
| Supervisor Approving Name:<br>SGT KARIKARIAWERE K | Tax #:<br>922573 | Command:<br>PBMS | Rep.Agency:<br>NYPD |
| Complaint Report Entered By:<br>PAA KELLUM | Tax #:<br>327905 | Command:<br>M PCT S | Rep.Agency:<br>NYPD |
| Signoff Supervisor Name:<br>SGT MOLININI | Tax #:<br>921601 | Command:<br>M PCT S | Rep.Agency:<br>NYPD |



# END OF COMPLAINT REPORT
# 2012-014-00998



Print this Report

EXHIBIT D

BASIL AGROCOSTEA
c/o *Agro Accounting*
P.O. Box 30157
New York, NY 10011

917.650.4534

Agro.Art.CPA@Hotmail.com

February 20, 2012

OK Harris Works of Art
383 West Broadway
New York, NY 10012
Attn: Owner or President

Dear Important Gallerist and Proponent of Culture:

I am an accountant to artists, art galleries and the greater creative community. I enclose a letter of praise courtesy of my former employer, a prominent accounting firm in midtown Manhattan.

From grammar school with the children of entertainment legend Diana Ross and the eminent Wildenstein art family, to providing the unfortunate with community service in the South Bronx, I am in touch with all facets of society. Thus, I provide accounting and tax services while carrying the most profound cultural, economic and political knowledge: subliminally, I will influence you toward greater gain.

I am also communicating with good people like you through leading art and culture media firm Louise Blouin Media – on ARTINFO.com and in the upcoming issue of Gallery Guide (Chelsea section). On this note, I wish you the best in March, NYC art fair month, and I invite you to a courtesy consultation with my company this tax season.

Kind regards,

*Basil*

Basil Agrocostea

BASIL AGROCOSTEA
c/o *Agro Accounting*
P.O. Box 30157
New York, NY 10011

917.650.4534                                                              *Agro.Art.CPA@Hotmail.com*

February 20, 2012

Robert Miller Gallery
524 West 26th Street
New York, NY 10001
**Attn:** Mrs. Betsy Miller

Dear Important Gallerist and Proponent of Culture:

I am an accountant to artists, art galleries and the greater creative community. I enclose a letter of praise courtesy of my former employer, a prominent accounting firm in midtown Manhattan.

From grammar school with the children of entertainment legend Diana Ross and the eminent Wildenstein art family, to providing the unfortunate with community service in the South Bronx, I am in touch with all facets of society. Thus, I provide accounting and tax services while carrying the most profound cultural, economic and political knowledge: subliminally, I will influence you toward greater gain.

I am also communicating with good people like you through leading art and culture media firm Louise Blouin Media – on ARTINFO.com and in the upcoming issue of Gallery Guide (Chelsea section). On this note, I wish you the best in March, NYC art fair month!, and I invite you to a courtesy consultation with my company this tax season.

Kind regards,

*Basil*

Basil Agrocostea

BASIL AGROCOSTEA
c/o *Agro Accounting*
P.O. Box 30157
New York, NY 10011

**917.650.4534**                                                *Agro.Art.CPA@Hotmail.com*

February 20, 2012

Galerie Lelong
528 West 26th Street
New York, NY 10001
**Attn:** Mrs. Mary Sabbatino

Dear Important Gallerist and Proponent of Culture:

I am an accountant to artists, art galleries and the greater creative community. I enclose a letter of praise courtesy of my former employer, a prominent accounting firm in midtown Manhattan.

From grammar school with the children of entertainment legend Diana Ross and the eminent Wildenstein art family, to providing the unfortunate with community service in the South Bronx, I am in touch with all facets of society. Thus, I provide accounting and tax services while carrying the most profound cultural, economic and political knowledge: subliminally, I will influence you toward greater gain.

I am also communicating with good people like you through leading art and culture media firm Louise Blouin Media – on ARTINFO.com and in the upcoming issue of Gallery Guide (Chelsea section). On this note, I wish you the best in March, NYC art fair month!, and I invite you to a courtesy consultation with my company this tax season.

Kind regards,

*Bapil*

Basil Agrocostea

BASIL AGROCOSTEA
c/o *Agro Accounting*
P.O. Box 30157
New York, NY 10011

**917.650.4534**                                                        *Agro.Art.CPA@Hotmail.com*

February 20, 2012

Sean Kelly Gallery
528 West 29th Street
New York, NY 10001
**Attn:** Owner or President

Dear Important Gallerist and Proponent of Culture:

I am an accountant to artists, art galleries and the greater creative community. I enclose a letter of praise courtesy of my former employer, a prominent accounting firm in midtown Manhattan.

From grammar school with the children of entertainment legend Diana Ross and the eminent Wildenstein art family, to providing the unfortunate with community service in the South Bronx, I am in touch with all facets of society. Thus, I provide accounting and tax services while carrying the most profound cultural, economic and political knowledge: subliminally, I will influence you toward greater gain.

I am also communicating with good people like you through leading art and culture media firm Louise Blouin Media – on ARTINFO.com and in the upcoming issue of Gallery Guide (Chelsea section). On this note, I wish you the best in March, NYC art fair month!, and I invite you to a courtesy consultation with my company this tax season.

Kind regards,

*Basil*

Basil Agrocostea